**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| TONI MAREK, ) | |
| ) | Misc. Action No. 6:25-MC-00001 |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| PHI THETA KAPPA HONOR SOCIETY, ) | |
| ) | |
| Defendant ) | |

**PHI THETA KAPPA HONOR SOCIETY'S RESPONSE IN OPPOSITION TO TONI MAREK'S MOTION TO QUASH**

Toni Marek's Motion To Quash (Dkt. 1) should be denied. Contrary to Marek's assertions, she has already willingly inserted herself in *Phi Theta Kappa Honor Society v. Honorsociety.org, Inc.*, 3:22-cv-00208-CWR-RPM (the "S.D. Miss. Action"). Marek has freely provided documents to Defendant/Counter-Plaintiff HonorSociety.Org, Inc. ("Honor Society") and assisted it in the prosecution of counterclaims and third-party claims against Phi Theta Kappa Honor Society ("PTK") and PTK's President/CEO Dr. Tincher-Ladner. Marek also signed a Declaration submitted in support of Honor Society's Opposition to PTK's Second Motion for Temporary Restraining Order, Preliminary Injunction, and/or Gag Order. Further, Honor Society has disclosed Marek as a witness on its Amended Rule 26 Disclosures.

For these reasons, PTK rightfully attempted to obtain copies of all communications between Honor Society and Marek and to depose her on relevant subjects. Despite reasonable efforts to serve Marek with the subpoena, she has avoided those efforts at every turn. Her evasiveness is the hallmark of what courts frown upon – active evasion from civil process. This is despite no reasonable basis for doing so especially considering her clear cooperation with Defendants and insertion of her own testimony and beliefs into this matter.

The Court should enforce the subpoenas, not quash them. Marek has a heavy burden to prove that responding to either subpoena would be unreasonable or oppressive, and her Motion does nothing to demonstrate she meets this test. As a result, her Motion to Quash should be denied.

## I. FACTUAL BACKGROUND

### A.    The Underlying S.D. Miss. Action.

PTK initiated the S.D. Miss. Action against Honor Society on April 20, 2022, alleging trademark and trade dress infringement, false advertising, and unfair competition. *See* Smoot Decl. ¶ 2, Ex. A-1 (S.D. Miss. Action, Dkt. 1). On February 13, 2024, Honor Society produced dozens of documents it had received from Marek (without a subpoena) that Honor Society believed were relevant to the case. *Id.* ¶ 4. These documents included screencaptures of Marek's personal email account that could have only been taken by either Marek or someone she provided access to her account. *Id.*, Ex. A-2 (HS_284261). According to Honor Society, statements like those of Marek are relevant to Honor Society's affirmative defenses, as Honor Society would not have copied the intellectual property of a company with a "bad reputation."[1] *Id.* ¶ 5, Ex. A-3 (S.D. Miss. Action, Dkt. 91 at 8.) *See also id.*, Ex. A-4 at 4 (granting Motion to Quash subpoena to PTK's third-party ethics complaint servicer). Just weeks after producing the Marek documents, Honor Society issued a malicious survey, filled with questions intended to bias survey takers against PTK. *Id.* ¶ 6. PTK moved for and received a preliminary injunction against Honor Society. *Id.*, Ex. A-5.

---

[1] Marek is a former PTK International Officer, a non-paid volunteer position, who resigned over a decade ago. Smoot Decl. ¶ 7, Ex. A-6 (S.D. Miss. Action, Dkt. 289-50 ¶¶ 4, 15). She made her resignation following public allegations of sexual harassment by Dr. Rod Risley, PTK's former president. (*Id.* ¶ 15.) Marek subsequently filed suit *pro se* against PTK on September 5, 2014 in this Court alleging employment discrimination. *See Marek v. Phi Theta Kappa Honor Society*, 6:14-cv-00055, Dkt. 1. PTK moved to dismiss or alternatively for summary judgment. *Id.*, Dkt. 4. The Court granted PTK's motion, dismissing Marek's claim with prejudice on February 13, 2015, finding that Marek "failed to remonstrate a genuine issue of material fact regarding the threshold showing of remuneration." *Id.*, Dkt. 9 at 11.

2

When Honor Society recycled these malicious allegations months later in +5,000 webpages Honor Society generated using artificial intelligence, PTK again sought an injunction from the court. *Id.* ¶ 7. In support of Honor Society's Opposition to PTK's Second Motion for Preliminary Injunction, Marek submitted a Declaration, again without a subpoena, which Honor Society used to support its claims that certain allegations against PTK were true (albeit not being at issue in the S.D. Miss. Action). *Id.*, Ex. A-6 (S.D. Miss. Action, Dkt. 289-50). The Court was unpersuaded and described Honor Society's litigation tactics as "want[ing] to punch PTK in the mouth at every opportunity" and that its "online behavior paints a picture of a petulant cyberbully fixated on destroying a competitor." *Id.*, Ex. A-7 (SD Miss. Action Dkt. 230 at 27). Accordingly, the Court again enjoined Honor Society's conduct. *Id.*, Ex. A-7 (S.D. Miss. Action, Dkt. 230).

Since then, counsel for PTK has learned of other instances of Marek attempting to interfere with the underlying litigation, while at the same time attempting to spread Honor Society's claims. On January 16, 2025, Marek issued an "open letter" to PTK's Board of Directors, largely parroting Honor Society's false advertising counterclaim in this case and that was likely made at the direction or guidance of Michael Moradian, Honor Society's Executive Director. Polak Decl. ¶ 2, Ex. B-1; *id.* ¶ 6. On January 29, 2025, Marek issued another communication, this time to one of PTK's largest grantors of scholarships, again largely repeating Honor Society's false advertising counterclaim as well as unfounded allegations of financial abuse. *Id.* ¶ 3. On the same day, Marek contacted PTK's insurance provider that is in part funding PTK's defense in the S.D. Miss. Action, attempting to call into question PTK's conduct and repeating in part Honor Society's counterclaims. *Id.* ¶ 4. Marek further announced her upcoming (and as yet unpublished) "free" book *Saving PTK: The Whistleblower's Fight for Truth and Change*, which purportedly in part examines PTK's "recruitment messaging" – the same messaging at issue in the S.D. Miss. Action.

3

*Id.* ¶ 8, Ex. B-5. Upon information and belief, it is likely that Moradian and Honor Society are the impetus behind the book, and may have also provided funding for it as well. *Id.* ¶ 9.

This conduct contradicts any claim Marek makes that she has no interest in being drawn into this litigation or that she has no relevant information. Marek is perpetuating Honor Society's counterclaim of false advertising to PTK and its affiliates. Her actions are not only relevant to Honor Society's claims in this action but also to PTK's claim of intentional interference to the extent that her actions are causing harm to PTK, and it can be shown that Moradian is directing or at least coordinating her public statements.

**B.     PTK's Efforts to Serve the Subpoenas.**

On October 21, 2024, PTK filed its Notice of Intent to Serve Subpoena on Toni Marek. Smoot Decl. ¶ 9, Ex. A-9 (S.D. Miss. Action, Dkt. 283). Since then, PTK has diligently attempted to personally serve Marek to no avail. PTK's first process server attempted to personally serve Marek multiple times at her home but was unable to do so, despite persons being in residence. *Id.* ¶ 10, Ex. A-10. On October 29, PTK also emailed copies of the subpoenas to Marek directly at her business account along with an email that reflected the reports PTK had received from its process server. *Id.* ¶ 11, Ex. A-11. Marek did not respond. *Id.* ¶ 11.

Following weeks of unsuccessful attempts, PTK requested service of the subpoenas through the Victoria County Sheriff. A deputy attempted to serve the subpoenas four times at Marek's residence between November 15 and November 21, leaving her a print notice of their attempts on the door as well as voicemails. *Id.*, Ex. A-12. On November 26, the sheriff's department also sent a letter to Marek about their attempts. *Id.* According to the Victoria County Sheriff's Affidavit of Attempt Service, the reason for non-service was "avoiding service." *Id.*

Subsequently, PTK retained another process server to attempt service. *Id.* ¶ 13. Like the first process server and the Victoria County Sheriff, this process server was unable to personally

4

serve Marek. *Id.* ¶ 14, Ex. A-13. At one point, the process server was able to physically approach Marek with the Subpoenas, but she fled on foot and led the process server on a vehicle pursuit. *Id.* Following Marek's physical evasion of PTK's investigator, PTK emailed Marek a letter on December 4, 2024, notifying her that such evasions are in violation of Texas Penal Code § 38.16 and requested that she respond to the Subpoenas, which were again attached. *Id.* ¶ 15, Ex. A-14. Marek did not respond. *Id.* ¶ 15.

On December 12, 2024, and at counsel for PTK's instruction, the process server and a county constable taped a copy of the Subpoenas to Marek's front door. *Id.* ¶¶ 16, 17.

Despite her evasiveness, on December 13, 2024, Honor Society disclosed Marek as a witness it may call in support of its claims and defenses in this action in its Supplemental Rule 26(a)(1) Initial Disclosures. *Id.* ¶ 8, Ex. A-8.

        **C.    Marek's Motion to Quash the Subpoenas in the S.D. Miss. Action.**

On December 19, 2024, Marek served PTK a copy of her Motion to Quash in the S.D. Miss. Action. Smoot Decl. ¶ 18, Ex. A-15 (S.D. Miss. Action, Dkt. 371). Marek did not serve any objections to either subpoena. *Id.* PTK filed a response requesting the District Court deny Marek's Motion to Quash and instead compel compliance with the Subpoenas. *Id.* ¶ 19, Ex. A-16 (S.D. Miss. Action, Dkt. 382). Following Marek untimely serving her Reply Brief, PTK submitted a Notice of Supplemental Exhibits to include additional evidence of Marek's intentional involvement in the litigation, including a January 16, 2025 letter to PTK's Board of Directors and a January 20, 2024 email to a PTK chapter president, who Marek encouraged to sign a Change.org petition she created titled "Stand Up for Students! Stop Misleading Students & Toxic Bullying by Phi Theta Kappa HQ." *Id.* ¶ 20, Ex. A-17 (S.D. Miss. Action, Dkt. 398-1 ¶¶ 3-5.) In both the letter to PTK's Board of Directors and the Change.org petition, Marek reiterated some of the same false advertising claims Honor Society asserts in the S.D. Miss. Action. *Id.*

On January 30, 2025, the District Court in the S.D. Miss. Action denied without prejudice Marek's Motion to Quash. *Id.* ¶ 21, Ex. A-18 (S.D. Miss. Action, Dkt. 402). The district court acknowledged that Marek had "previously submitted a Declaration," and "Honor Society also disclosed Marek as a witness it may call in support of its claims and defenses." *Id.,* Ex. A-15 at 1. Noting "[t]here is evidence Marek has evaded service of the subpoenas," the district court concluded that as the issuing court, it lacked jurisdiction to resolve the motion, and that the proper situs for issues regarding the Subpoenas is the compliance court. *Id.,* Ex. A-15 at 2. Just a day later, and after ignoring multiple communications from PTK's counsel to contact him directly, Marek again contacted PTK's Board of Directors with an "Open Letter and Evidence Regarding PTK Leadership and Governance" requesting "to be heard." Polak Decl. ¶ 5, Ex. B-1.

On February 5, 2025, counsel for PTK sent a communication to Marek, seeking her cooperation in complying with the Subpoenas and notifying her that if she did not respond by February 7, 2025, PTK would move forward with filing a motion to compel her compliance. *Id.* ¶ 7, Ex. B-2. On February 6, 2025, Marek informed PTK that she was filing a Motion to Quash the Subpoenas with this Court.

### D.     Compliance with LR 7.1(D).

Counsel has attempted to contact multiple times Marek concerning service, including most recently on February 5, 2025. *See* Polak Decl. ¶5, Ex. B-1; *id.* ¶ 7, Ex. B-2; Smoot Decl. ¶ 11, Ex. A-11; *id.* ¶ 15, Ex. A-14. She has been non-responsive to any and all efforts to have a conversation concerning this relief. Instead, she has continued to harass PTK's Board with direct communications, as well as PTK's grantors. As such, despite reasonable efforts to confer, and as a direct result of Marek's silence, counsel has been unable to confer with Marek to determine if any agreement can be reached that would avoid the need for this motion.

## II. MAREK'S MOTION TO QUASH SHOULD BE DENIED.

### A. Legal Standard.

"A court may quash or modify a subpoena if it subjects a person to undue burden." *Aldridge v. Cain*, 2023 WL 6929799, at *2 (S.D. Miss. Oct. 19, 2023) (citing Fed. R. Civ. P. 45(d)(4)(iv)). "Rule 45(d)(3), however, only allows 'the court for the district where compliance is required' to quash or modify a subpoena." *Id.*

"The moving party has the burden of *proof* to demonstrate 'that compliance with the subpoena [duces tecum] would be unreasonable and oppressive.'" *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted) (emphasis added). "Proof actually establishing the extent of the alleged undue burden is required to obtain relief, not mere unsupported generalizations, conclusory statements or assertions." *Sines v. Kessler*, 325 F.R.D. 563, 565-66 (E.D. La. 2018). In determining whether a subpoena presents an undue burden, courts consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818 (citations omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."

### B. Improper Service Is Not One of the Enumerated Grounds to Quash a Nonparty Subpoena.

Marek's argument related to improper service is not contemplated as an argument to quash a subpoena and should be disregarded. "[T]he Federal Rules of Civil Procedure govern . . . subpoenas . . ., and improper service is not one of the enumerated grounds to quash a nonparty

7

subpoena." *In re Bayerische Motoren Werke AG*, 2022 WL 2817215, at *3 (S.D.N.Y. July 19, 2022) (citing Fed. R. Civ. P. 45(d)(3)). In *Bayerische*, the court declined to quash a subpoena duces tecum and deposition subpoena issued to a third party. *Id.* at *1-*2. The third-party objected based on improper service, as the subpoenas were delivered to his mother-in-law at her residence and mailed to him. *Id.* The court was unpersuaded, finding the third party had "received actual and timely notice of the subpoenas through personal delivery to his mother-in-law . . . and emails to his attorneys." *Id.* at *3. The court also found that the record suggests this argument was "not made in good faith" as the third-party's attorneys "chastised BMW's attorneys for attempting personal service" first rather than attempting to serve through counsel, who refused to accept service. *Id.*

Here, Marek cannot claim improper service as grounds to quash the subpoenas. *See* Fed. R. Civ. P. 45(d)(3). Further, the record is replete with her efforts to evade service. PTK has been attempting to effect personal service since late October 2024. PTK has sent emails (to Marek's business and personal accounts), retained process servers, and enlisted the help of the local sheriff's office to effect service. *See generally* Smoot Decl. The sheriff's office in particular left multiple voicemails, hangtags, and at least one letter, notifying Marek of their service attempts (*id.* ¶ 12, Ex. A-12); yet Marek makes no mentions of any of these attempts. Thus, the subpoenas should not be quashed for improper service.

        **C.**        **Marek Makes No Showing that the Requested Documents Are Not Relevant.**

Marek's Motion provides *nothing* beyond conclusory statements and generalizations to support her Motion to Quash. In other words, she has provided no proof of the alleged undue burden. *See Sines*, 325 F.R.D. at 565-66. Because Marek has not provided anything to prove that the subpoena duces tecum is unreasonable or oppressive, her Motion to Quash should be denied.

Honor Society's own production of communications from Marek in this litigation and Marek's willing insertion of her testimony through her Declaration in support of Honor Society's defense against the Second Preliminary Injunction motion demonstrate Marek's possession of relevant information. *See* Smoot Decl. ¶ 7, Ex. A-6. As such, it should be clear that PTK is seeking information relevant to its claims. "Discovery requests are relevant when they seek admissible evidence or evidence that is "'reasonably calculated to lead to the discovery of admissible evidence.'" *Wiwa*, 392 F.3d at 820 (citations omitted) (finding subpoena "clearly requests information and documents that are relevant to Kiobel's complaint"). Thus, whether PTK's requests are "relevant" turns on "whether they are 'reasonably calculated' to lead to evidence admissible as to [its] claims against [Honor Society]." *Id.*

PTK alleges tortious interference claims against Honor Society arising from, in part, Honor Society's republication of claims made by Marek and purportedly based on information received by Honor Society (e.g., Moradian) directly from Marek. In its subpoena, PTK seeks documents and communications that may evidence collusion of Honor Society with third parties to further harm PTK, including communications with Marek. For example, recently, PTK became aware that at least one, if not more, individuals were submitting false Better Business Bureau complaints about PTK. These documents and communications are therefore reasonably calculated to lead to evidence admissible as to PTK's claims. PTK believes that Marek has been acting at Moradian's direction, likely at a level to establish agency by her with Honor Society.

Likewise, PTK is also seeking information relevant to Honor Society's Counterclaims. Last year, in response to PTK's Motion to Quash the NAVEX Subpoena, Honor Society claimed that it was entitled to *all* complaints made to and about PTK. Smoot Decl. ¶ 5, Ex. A-3 at 8. Honor Society claimed that such documents were pertinent to its affirmative defense that it would not

9

have traded off the goodwill of a company with such a poor reputation. *Id.* Although Magistrate Judge Ball disagreed, failing to find how private complaints about PTK reflected on its public reputation (*id.* ¶ 5, Ex. A-4 at 4), that has not stopped Honor Society from perpetuating Marek's claims against PTK in both a now enjoined survey and over 5,000 webpages. *Id.* ¶¶ 6-7. Honor Society found Marek's claims so relevant that it submitted a declaration from her in support of its Opposition to PTK's Second Motion for Preliminary Injunction. *Id.* ¶ 7. Marek cannot freely testify on behalf of one party while claiming she has no relevant information to the other party. And again, Marek has also provided documents to Honor Society in this case that Honor Society has deemed to be relevant and produced. *Id.* ¶ 2. At minimum, these documents and communications are relevant to PTK's ability to address Honor Society's affirmative defenses.

> **D. Marek Makes No Showing that Appearance for Deposition Would Be Unreasonable and Oppressive.**

Just as she failed to do with respect to the subpoena duces tecum, Marek has also failed to meet her "heavy burden of establishing that compliance with the subpoena [for testimony] would be unreasonable and oppressive." *Paul v. Stewart Enters., Inc.*, 2000 WL 1597925, at *1 (E.D. La. Oct. 26, 2000). In *Paul*, the court denied a third-party's motion to quash a subpoena to appear at trial based on preexisting travel, finding that "mere inconvenience . . . is an insufficient reason to deny Plaintiffs use of the subpoena power of the Court in their attempt to vindicate their claims." *Id.* at *2. The subpoenaed non-party had already given testimony in prior depositions and Plaintiff had "decided to include [her] testimony as part of their larger presentation of facts to the jury." *Id.* at *1.

Marek has not alleged *any* expense or inconvenience to the Court in her pending Motion to Quash (Dkt. 1). Marek should have anticipated her deposition when she voluntarily inserted herself into the S.D. Miss. Action. Not only has Marek already provided a sworn document to the

Court but also Honor Society has disclosed her as a potential witness in its amended Rule 26 disclosures. The mere inconvenience of a day's testimony is not a sufficient reason to deny PTK's use of the subpoena power. *Paul*, 2000 WL 1597925, at *2. PTK offered to schedule the deposition at her convenience. Smoot Decl. ¶ 11, Ex. A-11; *id.* ¶ 15, Ex. A-14. PTK will of course do the same. If conducting the deposition on a Saturday or Sunday is necessary to avoid Marek's work conflicts, then PTK will make the necessary arrangements.

### III. CLAIM OF "THREATS AND INTIMIDATION."

PTK's efforts to serve Marek through the ordinary course of process servers speaks for itself. Marek's efforts to evade service are similarly guiding to this Court. Nothing in the December 4, 2024 letter is untrue or untoward. Smoot Decl. ¶ 15, Ex. A-14. The Texas Legislature enacted Texas Penal Code § 38.16 for a reason – to compel potential witnesses to cooperate in the civil justice system where required. It is likely the Legislature enacted that statute for precisely the reason presented here, when a witness engages in "physical" avoidance and not mere hiding (i.e., "avoiding detection") from service. Such physical avoidance can be dangerous, which is unfortunately the choice Marek made here. The investigator described Marek running from him, jumping into her car, making an illegal traffic maneuver, and fleeing at a speed higher than the speed limit. Smoot Decl. ¶ 14, Ex. A-13.

Reference to the Texas penal code was reasonable and justified. Contrary to her assertion that PTK has engaged in a "pattern of harassment and legal intimidation," PTK's communications were intended to put Marek on notice that further evasion could lead to enforcement as required under the law.

11

## IV. STATUS OF DISCOVERY.

The discovery deadline expired on December 19 by court order. The District Court for the Southern District of Mississippi has allowed the parties to engage in limited discovery where efforts to engage in that discovery pre-dated the expiration of the discovery deadline. The subpoenas to Marek should be treated no differently. The subpoenas were first issued on October 21, 2024, nearly two months prior to the expiration of the discovery deadline. Smoot Decl. ¶ 9, Ex. A-9 (S.D. Miss. Action, Dkt. 283). PTK could not have reasonably anticipated Marek's incredible efforts to physically avoid service of the subpoenas. As evidenced by the reports and affidavit of the process servers and Victoria County Sheriff, PTK has exercised diligence in its attempts to serve Marek.

## V. CONCLUSION

Marek cannot intentionally inject herself into this litigation by cooperating with Honor Society for years and submit a supporting declaration, then cry foul when PTK seeks to learn more about those efforts. For the foregoing reasons, PTK respectfully requests this Court deny Marek's Motion to Quash.

Respectfully submitted, this the 26th day of February, 2025.

*/s/ Jonathan G. Polak*
Jonathan G. Polak (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500 – phone
jpolak@taftlaw.com

Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215

(614) 221-2838 – phone
rsmoot@taftlaw.com

*/s/ Kevin D. Cullen*
Kevin D. Cullen, Texas State Bar #05208625
CULLEN, CARSNER, SEERDEN & CULLEN, LLP
119 S. Main Street
Victoria, TX  77901
(361) 573-6318 – phone
kcullen@cullenlawfirm.com

***Counsel for Defendant***

## **CERTIFICATE OF SERVICE**

I, Jonathan G. Polak, do hereby certify that I have this day electronically filed the foregoing pleading or other paper with the Clerk of the Court using the ECF system and electronically mailed a copy to the following:

>Toni Marek
>tonimarek@gmail.com

Dated: February 26, 2025

>*/s/ Jonathan G. Polak*
>Jonathan G. Polak