**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | |
|---|---|
| TONI MAREK, ) | |
| ) | Misc. Action No. 6:25-MC-00001 |
| Plaintiff ) | |
| ) | |
| v. ) | S. D. Miss. Civil Action No. 3:22-cv-00208- |
| ) | CWR-RPM |
| PHI THETA KAPPA HONOR SOCIETY, ) | |
| ) | |
| Defendant ) | |
| ) | |

**PHI THETA KAPPA HONOR SOCIETY'S MOTION TO COMPEL
SUBPOENA COMPLIANCE BY TONI MAREK,
OR FOR LEAVE FOR ALTERNATIVE SERVICE, INCLUDING SERVICE BY
FEDERAL MARSHAL**

Phi Theta Kappa ("PTK") respectfully moves this Court for entry of an order under Fed. R. Civ. P. 37 and 45 compelling Toni Marek ("Marek") to comply with the Subpoena to Testify at a Deposition in a Civil Action and Subpoena to Produce Documents issued in a case pending in the United States District Court for the Southern District of Mississippi, *Phi Theta Kappa Honor Society v. Honorsociety.org, Inc.* (the "SD Miss. Action"). In the event that service of PTK's subpoenas on Marek is deemed insufficient, PTK alternatively requests permission to serve Marek by the Federal Marshal's office, or such other alternative means such as the broader set of service methods provided by Federal Rule of Civil Procedure 4(e). The grounds for this Motion are set forth in the Memorandum below and the accompanying Declarations of Rachel Smoot and Jonathan Polak in Support of PTK's Motion to Compel Subpoena Compliance by Toni Marek, Or for Leave for Alternative Service.

## **INTRODUCTION**

PTK seeks documents and the deposition of Marek pursuant to subpoenas duly issued on October 21, 2024 (the "Subpoenas") in the SD Miss. Action. (Smoot Decl., Ex. A-9). The SD Miss. Action is a contentious one – originally alleging trade dress and trademark infringement, Defendant Honorsociety.org, Inc. ("Honor Society") has forced PTK to seek not one but two preliminary injunctions and amend its complaint to allege claims of tortious interference with contract and business relations. Marek is a third-party who has willingly inserted herself in the SD Miss. Action. She has provided documents to Honor Society and assisted it in the prosecution of its counterclaims against PTK and third-party claims against Dr. Tincher-Ladner, the President and CEO of PTK. Marek also signed a Declaration submitted in support of Honor Society's Opposition to PTK's Second Motion for Temporary Restraining Order, Preliminary Injunction, and/or Gag Order. (*Id.*, Ex. A-6 (SD Miss. Action, Dkt. 289-50)). Further, Honor Society has disclosed Marek as a witness on its Amended Rule 26 Disclosures. (*Id.*, Ex. A-8).

For these reasons, PTK rightfully attempted to obtain copies documents from Marek related to the SD Miss. Action and to depose her on relevant subjects. Honor Society never objected to the subpoena. Despite reasonable efforts to serve Marek with the subpoena, she has avoided those efforts at every turn. Her evasiveness is the hallmark of what courts frown upon — active and physical evasion from civil process. Compliance with the Subpoenas presents minimal burden for Marek, but she has refused to respond, filing a Motion to Quash in the SD Miss. Action that was subsequently denied on jurisdictional grounds and without prejudice (*Id.,* Ex. A-18 (SD Miss. Action, Dkt. 402)). PTK now seeks relief from the court with jurisdiction over Marek and requests this Court enter an order compelling Marek's compliance or allowing for service by the Federal Marshal's office or otherwise alternative service.

## I. The Underlying SD Miss. Action.

PTK initiated the SD Miss. Action against Honor Society on April 20, 2022, alleging trademark and trade dress infringement, false advertising, and unfair competition. (*Id.*, Ex. A-1 (SD Miss. Action, Dkt. 1)). On February 13, 2024, Honor Society produced dozens of documents it had received from Marek (without a subpoena) that Honor Society believed were relevant to the case. (Smoot Decl. ¶ 4.) These documents included screencaptures of Marek's personal email account that could have only been taken by either Marek or someone she provided access to her account. (*Id.*, Ex. A-2, HS_284261.) According to Honor Society, Marek's statements are relevant to Honor Society's affirmative defenses, as Honor Society would not have copied the intellectual property of a company with a "bad reputation."[1] (*Id.* ¶ 5, Ex. A-3 (SD Miss. Action, Dkt. 91)). Just weeks after producing the Marek documents, Honor Society issued a malicious survey, filled with questions intended to bias survey takers against PTK. (*Id.*, Ex. A-5 (SD Miss. Action Dkt. 130)). PTK subsequently moved for and received a preliminary injunction against Honor Society. (*Id.*)

When Honor Society recycled these malicious allegations months later in +5,000 webpages Honor Society generated using artificial intelligence, PTK again sought an injunction from the court. In support of Honor Society's Opposition to PTK's Second Motion for Preliminary Injunction, Marek submitted a Declaration, again without a subpoena, which Honor Society used to support its claims that certain allegations against PTK were true (albeit not being at issue in the SD Miss. Action). (*Id.*, Ex. A-6 (SD Miss. Action, Dkt. 289-50)). The Court was unpersuaded and described Honor Society's litigation tactics as "want[ing] to punch PTK in the mouth at every

---

[1] Marek is a former PTK International Officer, a non-paid volunteer position, who resigned over a decade ago. Smoot Decl. ¶ 7, Ex. A-6 (S.D. Miss. Action, Dkt. 289-50 ¶¶ 4, 15). She made her resignation following public allegations of sexual harassment by Dr. Rod Risley, PTK's former president. (*Id.* ¶ 15.) Marek had also filed a pro se lawsuit regarding her allegations, which was dismissed pursuant to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (*Id.* ¶ 23.)

3

opportunity" and stated that its "online behavior paints a picture of a petulant cyberbully fixated on destroying a competitor." (*Id.*, Ex. A-7 (SD Miss. Action Dkt. 230 at 27)). Accordingly, the Court again enjoined Honor Society's conduct. (*Id.*)

Since then, counsel for PTK has learned of other instances of Marek attempting to interfere with the underlying litigation, while at the same time attempting to spread Honor Society's claims. On January 16, 2025, Marek issued an "open letter" to PTK's Board of Directors, largely parroting Honor Society's false advertising counterclaim in this case and that was likely made at the direction or guidance of Moradian. (Polak Decl. ¶ 2.) On January 29, 2025, Marek issued another communication, this time to one of PTK's largest grantors of scholarships, again largely repeating Honor Society's false advertising counterclaim as well as unfounded allegations of financial abuse. (*Id.* ¶ 3) On the same day, Marek contacted PTK's insurance provider that is in part funding PTK's defense in the SD Miss. Action, attempting to call into question PTK's conduct and repeating in part Honor Society's counterclaims. (*Id.* ¶ 4.) Marek further announced her upcoming (and as yet unpublished) "free" book *Saving PTK: The Whistleblower's Fight for Truth and Change*, which purportedly in part examines PTK's "recruitment messaging" – the same messaging at issue in the SD Miss. Action. (*Id.* ¶ 8, Ex. B-3.)  Upon information and belief, it is likely that Moradian and Honor Society are the impetus behind the book, and may have also provided funding for it as well. (*Id.* ¶ 9).

This conduct contradicts any claim Marek makes that she has no interest in being drawn into this litigation or that she has no relevant information. Marek is perpetuating Honor Society's counterclaim of false advertising to PTK and its affiliates. Her actions are not only relevant to Honor Society's claims in this action but also to PTK's claim of intentional interference to the

4

extent that her actions are causing harm to PTK, and it can be shown that Moradian is directing or at least coordinating her public statements.

## II. PTK's Efforts to Serve the Subpoenas.

On October 21, 2024, PTK filed its Notice of Intent to Serve Subpoena on Toni Marek. (Smoot Decl., Ex. A-9.) This was well before the court ordered discovery deadline of December 19, 2024. (*Id.*, Ex. A-16 (SD Miss. Action Dkt. 382 at 10)). Since then, PTK has diligently attempted to personally serve Marek to no avail. PTK's first process server attempted to personally serve Marek multiple times at her home but was unable to do so, despite persons being in residence. (Smoot Decl. ¶ 10, Ex. A-10) On October 29, PTK also emailed copies of the subpoenas to Marek directly at her business account along with an email that reflected the reports PTK had received from its process server. *(Id. ¶ 11.)* Marek did not respond. *(Id.)*

Following weeks of unsuccessful attempts, PTK requested service of the subpoenas through the Victoria County Sheriff. (Smoot Decl. ¶ 12, Ex. A-12.) A deputy attempted to serve the subpoenas four times at Marek's residence between November 15 and November 21, leaving her a print notice of their attempts on the door as well as voicemails. *(Id.)* On November 26, the sheriff's department also sent a letter to Marek about their attempts. *(Id.)* According to the Victoria County Sheriff's Affidavit of Attempt Service, the reason for non-service was "avoiding service." *(Id.)*

Subsequently, PTK retained another process server to attempt service. (Smoot Decl. ¶¶ 13, 14.) Like the first process server and the Victoria County Sheriff, the process server was unable to personally serve Marek. *(Id. ¶ 14, Ex. A-13.)* At one point, the process server was able to physically approach Marek with the Subpoenas, but she fled on foot and led the process server on a vehicle pursuit. *(Id.)* Following Marek's physical evasion of PTK's investigator, PTK emailed Marek a letter on December 4, 2024, notifying her that such evasions are in violation of Texas

5

Penal Code § 38.16 and requested that she respond to the Subpoenas, which were again attached. *(Id. ¶ 15, Ex. A-14.)* Marek did not respond. *(Id. ¶ 15.)*

On December 12, 2024, and at counsel for PTK's instruction, the process server and a county constable taped a copy of the Subpoenas to Marek's front door. (*Id.* ¶¶ 16, 17.)

Despite her evasiveness, on December 13, 2024, Honor Society disclosed Marek as a witness it may call in support of its claims and defenses in this action in its Supplemental Rule 26(a)(1) Initial Disclosures. (Smoot Decl. ¶ 8, Ex. A-8.)

### III. Marek's Motion to Quash the Subpoenas in the SD Miss. Action.

On December 19, 2024, Marek served PTK a copy of her Motion to Quash. (Smoot Decl., Ex. A-15 (SD Miss. Action Dkt. 371)). Marek did not serve any objections to either subpoena. *(Id.)* PTK filed a response requesting the District Court deny Marek's Motion to Quash and instead compel compliance with the Subpoenas. (*Id.*, Ex. A-16 (SD Miss. Action Dkt. 382)). Following Marek untimely serving her Reply Brief, PTK submitted a Notice of Supplemental Exhibits to include additional evidence of Marek's intentional involvement in the litigation, including a January 16, 2025 letter to PTK's Board of Directors and a January 20, 2024 email to a PTK chapter president, who Marek encouraged to sign a Change.org petition she created titled "Stand Up for Students! Stop Misleading Students & Toxic Bullying by Phi Theta Kappa HQ." (*Id.*, Ex. A-17 at Dkt. 398-1 ¶¶ 3-5.) In both the letter to PTK's Board of Directors and the Change.org petition, Marek reiterated some of the same false advertising claims Honor Society asserts in the SD Miss. Action. (*Id.*)

On January 30, 2025, the District Court in the SD Miss. Action denied without prejudice Marek's Motion to Quash. (*Id.,* Ex. A-18 (SD Miss. Action Dkt. 402)). The district court acknowledged that Marek had "previously submitted a Declaration," and "Honor Society also disclosed Marek as a witness it may call in support of its claims and defenses." (*Id.,* Ex. A-18 at

6

2.) Noting "[t]here is evidence Marek has evaded service of the subpoenas," the district court concluded that as the issuing court, it lacked jurisdiction to resolve the motion, and that the proper situs for issues regarding the Subpoenas is the compliance court. (*Id.,* Ex. A-18 at 3.) Just a day later, and after ignoring multiple communications from PTK's counsel to contact him directly, Marek again contacted PTK's Board of Directors with an "Open Letter and Evidence Regarding PTK Leadership and Governance" requesting "to be heard." (Polak Decl. ¶ 5, Ex. B-1.)

On February 5, 2025, counsel for PTK sent a communication to Marek, seeking her cooperation in complying with the Subpoenas and notifying her that if she did not respond by February 7, 2025, PTK would move forward with filing a motion to compel her compliance. (*Id.* at ¶ 7, Ex. B-2.) As of the date of this motion, Marek did not respond to counsel's communication. (*Id.*) Accordingly, PTK now moves this Court for an order requiring Marek's compliance with the Subpoenas or granting leave for alternative service of the Subpoenas.

## IV.    Applicable Legal Standard.

"Under Rule 26 of the Federal Rules of Civil Procedure, the scope of civil discovery is broad." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. 1:11-CV-03543-WHP, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Under Rule 45, a party may seek discovery from non-parties. Rule 26 supplies the appropriate scope of discovery that can be sought from non-parties, though Rule 45 imposes various procedural requirements and guards against the disclosure of certain sensitive information, such as trade secrets. *See* Fed. R. Civ. P. 45(d)(3); *see also In re Subpoenas to Plains All Am. Pipeline, L.P*, 2014 WL 204447, at *3.

7

On a motion to compel discovery, "[t]he moving party bears the burden of showing that the materials and information sought are relevant to the action." *Smith v. DeTar Hosp. LLC*, No. CIV.A. V-10-83, 2011 WL 6217497, at *2 (S.D. Tex. Dec. 14, 2011). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *Id.* A determination of proportionality is made "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

In determining whether a subpoena presents an undue burden, courts consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted). "Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."

### V.     The Subpoena Duces Tecum Should Be Enforced.

There is no evidence that the requested documents impose an undue burden on Marek beyond her unsubstantiated allegations set forth in her Motion to Quash. *See Sines,* 325 F.R.D. at 565-66. There is also no basis showing that the subpoena duces tecum is unreasonable or oppressive. Further, the requested documents are relevant, evidenced by not only Honor Society's

8

own production of them in the SD Miss. Action, but also Marek's own insertion of her testimony through her Declaration in support of Honor Society's defense. *(See* Smoot Decl., Ex. A-6 (SD Miss. Action, Dkt. 289-50)). As such, it should be clear that PTK is seeking information relevant to its claims. "Discovery requests are relevant when they seek admissible evidence or evidence that is "reasonably calculated to lead to the discovery of admissible evidence." *Wiwa,* 392 F.3d at 820 (citations omitted) (finding subpoena "clearly requests information and documents that are relevant to Kiobel's complaint"). Thus, whether PTK's requests are "relevant" turns on "whether they are 'reasonably calculated' to lead to evidence admissible as to [its] claims against [Honor Society]." *Id.*

PTK has alleged tortious interference claims against Honor Society arising from, in part, Honor Society's republication of Marek's claims. Indeed, just weeks prior to Honor Society's conduct leading to PTK amending its complaint to add the tortious interference claims, Honor Society produced documents it received from Marek, which Honor Society felt were relevant to the underlying litigation. In the subpoena duces tecum, PTK seeks documents and communications that may evidence collusion of Honor Society with third parties to further harm PTK, including communications with Marek. For example, PTK became aware that at least one, if not more, individuals were submitting false Better Business Bureau complaints about PTK, likely submitted to harm PTK's public reputation. These documents and communications are therefore reasonably calculated to lead to evidence admissible as to PTK's claims. PTK believes that Marek has been acting at Moradian's direction, likely at a level to establish agency her as an Honor Society agent.

Likewise, PTK is also seeking information relevant to Honor Society's affirmative defenses. In 2023, in response to PTK's Motion to Quash a subpoena to PTK's third party ethics complaint servicer, Honor Society claimed that it was entitled to *all* complaints made to and about PTK. (Smoot Decl., Ex. A-3 (SD Miss. Action Dkt. 91 at 8)). Honor Society claimed that such documents were pertinent to its

9

affirmative defense that it would not have traded off the goodwill of a company with such a poor reputation. *(Id.)* Although Magistrate Judge Ball disagreed that private complaints about PTK reflected on its public reputation (*Id.*, Ex. 4 (SD Miss. Action Dkt. 95 at 4)), that has not stopped Honor Society from perpetuating Marek's claims against PTK in both a now enjoined survey and over 5,000 webpages. Honor Society found Marek's claims so relevant that it submitted a declaration from her in support of its Opposition to PTK's Second Motion for Preliminary Injunction. Marek cannot freely testify on behalf of one party while claiming she has no relevant information to the other party. And again, Marek has also provided documents to Honor Society in this case that Honor Society has deemed to be relevant and produced. At minimum, these documents and communications are relevant to PTK's ability to address Honor Society's affirmative defenses.

### VI. Marek's Appearance for Deposition Would Not Be Unreasonable and Oppressive.

In addition to documents from Marek, PTK also seeks her deposition. It is likely, if not certain, that there are oral communications between Marek and Moradian, and Marek and other third-parties, concerning her efforts against PTK and relevant to the pending lawsuit. Despite Marek's hyperbolic protestations, there is no evidence that meets the "heavy burden of establishing that compliance with the subpoena [for testimony] would be unreasonable and oppressive." *Paul v. Stewart Enters., Inc.*, 2000 WL 1597925, at *1 (E.D. La. Oct. 26, 2000). In *Paul,* the court denied a third-party's motion to quash a subpoena to appear at trial based on preexisting travel, finding that "mere inconvenience . . . is an insufficient reason to deny Plaintiffs use of the subpoena power of the Court in their attempt to vindicate their claims." *Id.* at *2. The subpoenaed non-party had already given testimony in prior depositions and Plaintiff had "decided to include [her] testimony as part of their larger presentation of facts to the jury." *Id.* at *1.

Marek has not alleged any expense or inconvenience other than a claim that she would experience "lost income exceeding any nominal witness fee." (Smoot Decl., Ex. A-15 (Dkt. 371 at 2)). This conclusory statement is not enough to prove that her compliance would be unreasonable and oppressive. *Sines,* 325 F.R.D. at 565-66. Marek should have anticipated her deposition when she voluntarily inserted herself into this litigation through her provision of information and documents to Honor Society. Not only has Marek already provided a sworn document to the district court in the SD Miss. Action but Honor Society has also disclosed her as a potential witness in its amended Rule 26 disclosures. Further, Marek cannot in good faith assert that her compliance with the Subpoenas would burden her in light of the extensive time she has committed to broadcasting Honor Society's claims against PTK— most recently, Marek has seemingly made it her mission to interfere with PTK's business on a near daily basis, emailing its Board of Directors and major funding partners, starting a Change.org petition, and announcing the publication of her book about PTK on PR Newswire. Given her repetition of Honor Society's false advertising claims throughout these documents, and her prior support of Honor Society, it stands to reason that her actions are at the direction or guidance of Moradian.

Marek cannot credibly demand to be heard while simultaneously denying her involvement in the litigation. The mere inconvenience of a day's testimony is not a sufficient reason to deny PTK's use of the subpoena power. *Paul,* 2000 WL 1597925, at *2. PTK offered to schedule the deposition at her convenience. (Smoot Decl. ¶ 11, Ex. A-11; *id.* ¶ 15, Ex. A-14). PTK will of course do the same. If conducting the deposition on a Saturday or Sunday to avoid Marek's work conflicts, then PTK will make the necessary arrangements.

## VII.    Alternatively, Granting Leave for Alternative Service is Appropriate.

PTK believes its service is compliant with the Federal Rules of Civil Procedure. Clearly, it was received by Ms. Marek and she does not appear to deny receipt of the summons. The Fifth Circuit has acknowledged "that any defect in service is cured when the intended recipient ultimately receives the subpoena." *Winn & Lovett Grocery Co. v. N.L.R.B.*, 213 F.2d 785 (5th Cir. 1954). However, if the Court deems PTK's service of the Subpoenas was insufficient, PTK requests permission to serve Marek by alternative means because PTK has made every reasonable attempt to effectuate personal service and Marek has intentionally physically evaded personal service.

PTK submits that service by federal marshal, authorized by an Order of this Court, is likely to cure the issues created by Marek's past evasion. PTK is hopeful that Marek is less likely to conceal herself from a federal marshal, or otherwise attempt high speed evasive maneuvers.

If the Court is so inclined, or otherwise service through the federal marshal service is unsuccessful, PTK requests that the Court also allow service by alternative means. Fed. R. Civ. P. 45(b)(1) governs service of subpoenas and states that "[s]erving a subpoena requires delivering a copy to the named person[.]" Ordinarily, that requires in-person delivery to the person or organizational representative. *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003). But when an issuing party can ensure receipt of a subpoena by other means — and especially where the issuing party has diligently attempted to serve the subpoena in person — some courts have permitted service by alternative means. *See, e.g.*, *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012); *S.E.C. v. Rex Venture Grp., LLC*, No. 5:13-MC-004-WTH-PRL, 2013 WL 1278088, at *2 (M.D. Fla. Mar. 28, 2013); *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 CIV. 9116, 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009).

That approach also comports with Fed. R. Civ. P. 1, which requires that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *See Cordius Tr. v. Kummerfeld*, No. 99 CIV. 3200, 2000 WL 10268, at *2 (S.D.N.Y. Jan. 3, 2000). Further, this Court has authority under the All Writs Act to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

Additionally, Texas law frowns upon physically evading service. The Texas Legislature enacted Texas Penal Code § 38.16, which provides that "[a] person commits an offense if he intentionally or knowingly by words or physical action prevents the execution of any process in a civil cause" unless "the actor evaded service of process by avoiding detection." The Texas Legislature likely enacted this provision to promote and to compel potential witnesses to cooperate in the civil justice system where required.

Applying these principles, the circumstances presented here provide the perfect example of when alternative service is appropriate. PTK has attempted to serve the Subpoenas through three different servers on multiple occasions over seven weeks. Delivering a copy of the Subpoenas in person appears impracticable because Marek has repeatedly and physically avoided personal service. The third process server described Marek running from him, jumping into her car, making an illegal traffic maneuver, and fleeing at a speed higher than the speed limit. (Smoot Decl. ¶ 14, Ex. A-13). It is likely the Texas Legislature enacted Texas Penal Code § 38.16 for precisely the reason presented here, when a witness engages in "physical" avoidance and not mere hiding (i.e., "avoiding detection") from service. Such physical avoidance can be dangerous, which is unfortunately the choice Marek made here. Based on Marek's continued physically evasion, there

may be no way for a process server to reach her physical presence at all, and therefore alternative service is appropriate.

As evidenced by her continued and regular use of her email address, tonimarek@gmail.com, to communicate with PTK's board and other third-parties, concerning this matter, service at that email address would be reasonable. There should be no concern that the email address is dormant, unused or no longer owned by Marek.

Accordingly, PTK requests that the Court issue an order either (1) directing the federal marshal's office to serve the Subpoenas on Marek at her home address and allowing service by affixing the Subpoenas to the front door of Marek's residence; (2) allowing service of the Subpoenas to Marek by email at the email address of tonimarek@gmail.com, or (3) or by other means that the Court deems appropriate and sufficient.

**VIII.     Compliance with LR 7.1(D)**

Counsel has attempted to contact Marek concerning service. (Polak Decl., Ex. B-2.) She has been non-responsive to any and all efforts to have a conversation concerning this relief. Instead, she has continued to harass PTK's Board with direct communications, as well as PTK's grantors. As such, despite reasonable efforts to confer and as a direct result of Marek's silence, counsel has been unable to confer with Marek to determine if any agreement can be reached that would avoid the need for this motion.

**IX.     Conclusion**

Marek cannot intentionally inject herself into this litigation by cooperating with Honor Society for years and submit a supporting declaration, then cry foul when PTK seeks to learn more about those efforts. For the foregoing reasons, PTK respectfully requests this Court order Marek to comply with the subpoena duces tecum within seven (7) days and to appear for deposition within

fourteen (14) days. Alternatively, PTK requests an order allowing alternative service of the Subpoenas, including ordering Marek to appear at a date and time certain to accept personal service of the Subpoenas. Where leave of Court is required to accomplish these actions, PTK requests that leave from this Court.

Respectfully submitted, this the 26th day of February, 2025.

*/s/ Jonathan G. Polak*
Jonathan G. Polak (Pro Hac Vice)
W. Michael Etienne (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204-2023
(317) 713-3500 – phone
jpolak@taftlaw.com
metienne@taftlaw.com


Rachel Smoot (Pro Hac Vice)
TAFT STETTINIUS & HOLLISTER LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
(614) 221-2838 – phone
rsmoot@taftlaw.com


*/s/ Kevin D. Cullen*
Kevin D. Cullen, Texas State Bar #05208625
CULLEN, CARSNER, SEERDEN & CULLEN, LLP
119 S. Main Street
Victoria, TX 77901
(361) 573-6318 – phone
kcullen@cullenlawfirm.com

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I, Jonathan G. Polak, do hereby certify that I have this day electronically filed the foregoing pleading or other paper with the Clerk of the Court using the ECF system and electronically mailed a copy to the following:

> Toni Marek
> tonimarek@gmail.com

Dated: February 26, 2025

*/s/ Jonathan G. Polak*
Jonathan G. Polak